OTTO B. FLINK v. GEORGE H. PARCELL, Administrator of the Estate of MAY B. JACKMAN, Appellant.—124 S. W. (2d) 1189.

Division One, February 8, 1939.

*Thomas M. Pratt* and *Harvey E. Hartz* for appellant.

*Watson, Ess, Groner, Barnett & Whittaker* for respondent.

BRADLEY, C.—We refer to respondent as claimant. September 6, 1935, claimant filed in the Probate Court of Jackson County, at Kansas City, a demand against the estate of May B. Jackman, deceased. October 28, 1935, the probate court, after a hearing on the claim, made an order disallowing it. Appeal was taken to the circuit court and there, upon trial without jury, the claim was allowed. The administrator appealed to the Kansas City Court of Appeals, and that court transferred the cause here because the amount involved, exclusive of costs, exceeded $7500. [See Secs. 1914, 1915, R. S. 1929, Mo. Stat. Ann., secs. 1914, 1915, pp. 2587, 2589.]

October 16, 1923, claimant obtained a judgment in the Circuit Court of Jackson County against May B. Jackman, for $4500, plus costs of $53.90. No payment was ever made upon this judgment. September 13, 1933, nine years, ten months, and twenty-seven days after the date of rendition claimant sued out *scire facias* to revive the judgment. The return term of the writ was the November Term, which convened November 13, 1933. Personal service was had upon May B. Jackman, the judgment defendant. No further steps were taken to revive, and no order or judgment of revival was ever made. April 25, 1935, May B. Jackman died, and George H. Parcell was appointed

administrator of her estate on May 10, 1935. September 6, 1935, a demand, based on the judgment, was exhibited and filed for allowance against her estate. The time elapsed from the rendition of the judgment to the filing of the demand against the estate was eleven years, ten months, and twenty days.

Section 886, Revised Statutes 1929. (Mo. Stat. Ann., sec. 886, p. 1168), is as follows: "Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever.''

From 1865 (Gen. Stat. 1865, sec. 31, p. 749) to 1895 (Laws 1895, p. 221) the limitation on a judgment was twenty years. The statute was again changed in 1899 (Laws 1899, p. 300) and has come down without change since 1899.

Claimant contends that the issuing and service of the *scire facias*, before the lapse of ten years from rendition, gave to the judgment a vitality that operated to make it a valid demand against the estate of the judgment defendant, notwithstanding the lapse of more than ten years since its rendition and before filing in the probate court. If *scire facias* is issued prior to the expiration of the ten years from the date of rendition, a judgment of revival is valid, though rendered *after* the expiration of the ten years. [Wayland v. Kansas City et al., 321 Mo. 654, 12 S. W. (2d) 438, l. c. 441.] Claimant says, in effect, that, at the time of filing the demand in the probate court, he could have had a judgment of revival in the circuit court, and that if the judgment at that time had sufficient life to support a judgment of revival, it had sufficient life to constitute a valid claim against the estate. But, assuming, without deciding, that claimant, at the time of filing the demand in the probate court, could have had judgment of revival in the circuit court, notwithstanding his inattention to the *scire facias* for nearly two years (see 34 C. J., sec. 1449, p. 682), it must not be overlooked that the suing out of the *scire facias* was not a *new* proceeding, but was a continuation of the cause in which it was issued (Peak v. Peak et al. (Mo.), 181 S. W. 394, l. c. 395, and cases there cited), while the filing of the demand in the

probate court was a *new* suit. [McFaul v. Haley, 166 Mo. 56, l. c. 68, 65 S. W. 995.]

As appears above, revival of a judgment may be had, if proceedings to revive are commenced within ten years from rendition, even though the order or judgment of revival is subsequent to the lapse of the ten years. A similar rule prevails as to executions. Section 1113, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1113, p. 1404) reads: "Executions may issue upon a judgment at any time within ten years after the rendition of such judgment." However, if execution is issued within the ten years, sale may be had thereunder, notwithstanding the levy and sale are *after* the expiration of ten years from the date of the judgment. [Wayland v. Kansas City et al., supra.] Section 1113 has remained unchanged since 1865. [See Gen. Stats. 1865, p. 636, sec. 11.]

Claimant cites Ewing v. Taylor, 70 Mo. 394; Tonnies v. McIntyre, 82 Mo. App. 268; Excelsior Steel Furnace Co. v. Smith et al. (Mo. App.), 17 S. W. (2d) 378; and McFaul v. Haley, supra.

Ewing v. Taylor involved a judgment filed for allowance in the probate court. June 10, 1873, Martha Taylor, by her trustee, asked that the judgment be allowed and classified against the estate of Thomas Taylor, her former husband. The judgment was rendered March 27, 1858, in a divorce action. The judgment, among other things, was that Thomas Taylor, on June 1, 1858, and on same day each year thereafter, as adjudged, pay Wellman, trustee for Martha, $30 for the support of an infant child born of the marriage. Taylor paid regularly up to June 1, 1863, and thereafter defaulted. He died in 1872, and Eliza A. and Alonzo Taylor were appointed administrators of his estate. Wellman, the trustee, died and Ewing was substituted. The probate court disallowed the claim and appeal to the circuit court was taken.

In the circuit court the following instruction was asked and refused: "It appearing to the court from the record read in evidence, that the judgment sought to be classified in the Ralls County Probate Court as a demand against the estate of Thomas Taylor, was rendered more than ten years previous to its presentation for classification in and by said probate court, and that the same had not been revived within ten years after the rendition of said judgment; that the same could not be classified by said court as a demand against said Taylor's estate, and the finding and judgment must be for defendant."

At the time of the Taylor case the statute, as now, prohibited execution on a judgment, absent revival, after the lapse of ten years from rendition, and at that time the limitation on a judgment was twenty years.

In ruling the point on the refusal of the instruction offered in the Taylor case, the court said (70 Mo. l. c. 398): "Until the time has

elapsed since the rendition of a judgment, which the law designates as the period when the presumption of payment may be indulged, since judgment may be enforced either against the judgment debtor by execution, if issued within ten years after its rendition, and after that time by suit founded on the judgment if brought within twenty years after its rendition, or in the event of the death of the judgment debtor, by exhibiting it as a demand against his estate for allowance and classification *within twenty years of its rendition*. (Italics ours.) If suit had been brought against decedent in his lifetime upon the judgment in question, he could not have defeated a recovery by simply showing that ten years had elapsed since its rendition, and that, therefore, no execution could issue on it, and such defense is equally unavailable by his administrator when such judgment is made the basis of a demand presented for allowance and classification against the estate.''

What is said in the Taylor case as to notice to the administrator before filing, for allowance against the estate, a judgment against the decedent in his lifetime is disapproved in Wernse v. McPike, 100 Mo. 476, l. c. 487, 13 S. W. 809.

In Tonnies v. McIntyre, supra, the facts were: In 1875 and 1876, Christian Tonnies recovered three judgments, aggregating $1661.45, against J. W. McIntyre. "Soon afterwards" Tonnies died, and his widow became administratrix of his estate, and later A. G. Tonnies became administrator *de bonis non*. September 26, 1878, the administrator *de bonis non* made final settlement, but no order of discharge was made. In 1895, McIntyre, the judgment defendant, died. Sarah McIntyre was appointed administratrix of his estate. Thereupon the administrator *de bonis non* of the estate of Tonnies, the judgment plaintiff, filed the three judgments as demands against the McIntyre estate. The probate court allowed the demands, and on appeal to the circuit court the same result was reached.

In ruling the case on appeal, the court said (82 Mo. App. l. c. 271): "The second point insisted upon by appellant is, that the judgments should not have been classified as such because not revived by *scire facias* within ten years after their rendition. The statute gives this process of revivor to restore the lien of a judgment and authorize a new execution thereon. [R. S. 1889, sec. 6013.] Although revived in this way a judgment does not lose its character as such, it is still within the statutory period of limitation conclusive as to the amount adjudged to be due, and as to all defenses which might have been set up prior to its obtention. In this case the title holder of the judgments is not asking process of execution, nor to enforce any judgment liens; he only asks that these judgments—which were mergers of the previous demands upon which were founded—be assigned to that class which the statute expressly provides for 'all judgments rendered against the deceased in his lifetime.' [R. S. 1889, sec. 183;

subdivision 4.] The decision of the circuit court so ordering the judgments in question to be assigned to the fourth class of demands against the estate of appellant's intestate is correct, and is therefore affirmed.''

It does not appear in the Tonnies case when in 1875 and 1876 the judgments were rendered; nor does it appear when in 1895 McIntyre died or just when the judgments were filed as demands against his estate. But it is apparent that, when the judgments were filed as claims or demands in the probate court, the twenty-year statute had not run.

Excelsior Steel Furnace Co. v. Smith et al., supra, holds that a judgment creditor is not confined to *scire facias* to save a judgment from the bar of limitation, but that a judgment may be kept alive by action brought on the judgment if brought before limitation has run.

McFaul v. Haley, supra, involved the allowance in the probate court of a demand based on a judgment. The judgment, for $1954.25, was rendered December 5, 1878, against Patrick Grady, and was presented as a demand for allowance against his estate on June 23, 1898. The probate court allowed the demand, but the circuit court on appeal refused allowance. It appears (166 Mo. l. c. 63) that the circuit court proceeded on the theory that limitation on the judgment was governed by the act of 1895, supra, and was ten years. In ruling the case the court said:

"Under the provisions of that section (Sec. 6796, R. S. 1889) the plaintiff's judgment was not barred, nor was it under the ban of the statutory presumption of payment in June, 1898, when it was presented to the probate court. But it had passed the age when execution could issue on it, or when it could be revived by *scire facias*. It could then be rendered available to the plaintiff only by a suit and a new judgment founded on it. If the testator had been living it would have been prima facie a good cause of action against him, and, as he was dead, it was prima facie a good cause of action against his executor, either in the circuit court or in the probate court.''

Claimant also cites Jones v. Nye. (Okla.), 156 Pac. 332; Smalley v. Bowling (Kan.), 68 Pac. 630; Baker v. Hummer, 31 Kan. 325, 2 Pac. 808; Dempsey v. Oswego Twp., 51 Fed. 97.

The Jones case was an action on a judgment. A demurrer to the petition was sustained. The judgment was in favor of Melissa Jones and her husband, Henry C. Jones, and was rendered October 11, 1911 The suit on the judgment was filed August 1, 1913. It was alleged in the petition that after the rendition of the judgment and on February 20, 1912, Henry C. Jones, one of the judgment plaintiffs, died, and that Melissa, his widow, and a judgment plaintiff, was appointed administratrix of his estate on April 12, 1912, and that the suit was brought by Melissa in her own behalf and as

administratrix of the estate of her husband. It was also alleged that the judgment sued on had been appealed to the Supreme Court, and that the appeal was dismissed ''for the reason that the action had not been revived in the name of the personal representative of Henry C. Jones within the prescribed statutory period of one year.'' Among other grounds, the demurrer alleged that the action was barred by the one-year Statute of Limitations relating to revival.

This statute (Sec. 5294, Rev. Laws, Okla. 1910) was as follows: ''An order to revive an action, in the names of the representatives or successor of a plaintiff, may be made forthwith, but shall not be made without the consent of the defendant, after the expiration of one year from the time the order might have been first made. . . .''

In the course of the opinion the court used this language (156 Pac. 334): ''This action is not, strictly speaking, an action to revive the judgment, but is an action to renew the obligation of the judgment by recovering another judgment thereon. The judgment sued on became dormant upon the death of Henry C. Jones, but it could have been revived within a 'year from the time the order might have been first made,' and during the year within which it could have been revived it was not dead, but only slumbering, so to speak, and retained enough vitality to sustain an action such as the one plaintiff has attempted to institute by the proceeding involved in this appeal. In other words, *as long as there was enough life in the dormant judgment to sustain a revivor thereof, there was enough life therein to sustain an action thereon* (italics ours), but, when that time had expired within which an order reviving it could have been made, then every spark of life had died out of it, it was dead, and it could not sustain an action to recover a judgment thereon,'' citing Freeman on Judgments (4 Ed.), sec. 432; Baker v. Hummer; Dempsey v. Oswego Twp., supra.

None of the cases cited by claimant, nor any case or authority we have been able to find, support claimant's case. The portion we have italicized in the excerpt quoted from the Jones case, supra, at first impression, might seem to do so, but that case does not hold that if reviver proceedings had been commenced within the one year, and then given no further attention, as in the present case, that a suit on the judgment, filed after the lapse of the year, could have been maintained.

Section 1105, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1105, p. 1400), among other things, provided that the lien of a judgment ''shall commence on the day of'' its rendition and ''continue for three years, subject to be revived.'' Section 1106, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1106, p. 1401) reads: ''The plaintiff or his legal representative may, at any time within ten years, sue out a *scire facias* to revive a judgment and lien; but after the expiration of

ten years from the rendition of the judgment, no *scire facias* shall issue.''

Section 1106 says that the plaintiff·or his legal representative may, in the ten years, sue out *scire facias to revive a judgment and lien*. The practical meaning of this language, since the act of 1895, changing the limitation on a judgment from twenty to ten years, has been *to renew a .judgment and revive a lien*. And this because, since 1895, there is no period during the ten years from rendition that a judgment is *dormant*, as was the case under the old statute when the limitation on a judgment was twenty years. A judgment under the old statute, during the last ten of the twenty years, was in a kind of *dormant* state because no execution could issue upon it after the lapse of ten years.

Able counsel cite no authority directly in point on the question involved in this case, and we find none, but·when all the pertinent statutes .are considered, and the case law, so far as applicable, we think the common sense of the situation is contrary to claimant's case. Suppose that May B. Jackman had not died, and that before the lapse of ten years from the rendition of the judgment, claimant had sued out *scire facias*, and then had let the matter ride with no further attention, as in the present case, would it be reasonable to say that he could just forget his *scire facias* proceeding and, after the lapse of ten years from the rendition of the judgment, maintain a suit on the judgment? We do not think so.

It is our conclusion that' the trial court was in error in allowing claimant's demand based upon the judgment. So far as concerns the cause in the probate court, the judgment had expired and was a dead letter when the demand based thereon was filed.

The judgment should be reversed and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.